[No. 30243. Department One. November 20, 1947.]

M. L. DENNISON, *Appellant*, v. CHARLES H. HARDEN *et al.*, *Respondents.*[1]

[1] Reported in 186 P. (2d) 908.

*Chavelle & Chavelle,* for appellant.

*Skeel, McKelvey, Henke, Evenson & Uhlmann* and *Altha P. Curry,* for respondents.

HILL, J.—On May 12, 1943, the appellant and his wife and the respondents entered into an executory real-estate contract whereby the respondents agreed to sell and the appellant and his wife agreed to purchase, for twelve thousand dollars,

" . . . the following described lot, tract, or parcel of land situated in King County, State of Washington, to-wit:

"TL-17 THAT PORTION OF NW¼ of SE¼ LY N OF ETHEL O. PECK RD LESS S 96' OF W 417.39' THEREOF, SEC. 8 TWP 22 RANGE 4

"PURCHASE PRICE TO INCLUDE PROPERTY AND FRUIT TREES, ALL TOOLS, TRACTOR, TRUCK, FERTILIZER, ETC., FRUIT TREES, BERRY BUSHES, AND CROPS IN GROUND

"with the appurtenances thereto belonging . . ."

One thousand dollars was paid on the execution of the contract, and the balance was to be paid in installments of fifty dollars a month.

The contract contained six numbered paragraphs: No. 1 set out the time and amount of the payments; No. 2 contained the agreement of the purchasers to pay all taxes and assessments and to keep the buildings insured; No. 3 provided that no extension of time of payment or waiver of any default should affect the right to require prompt payment of any subsequent installments; No. 4 provided that the purchasers would execute a mortgage on demand of the vendors; No. 5 provided that the land should be "conveyed by a good and sufficient warranty & title insurance deed," on full payment of the purchase price or on demand of the vendor for a mortgage covering the unpaid portion of the purchase price; and No. 6 contained the usual "time is of the essence" provisions.

The contract was signed and acknowledged by appellant and his wife and by both respondents.

Appellant urges that there was a warranty that there were 276 Pacific Gold peach trees, that being the number of trees in the so-called "commercial orchard." Appellant expressly disclaims any fraud on the part of the respondents, but insists that there was a breach of the warranty in that the trees were of a scrub or worthless variety, and asks damages therefor. The evidence sustaining this claim of express warranty was that the respondents had represented, on two or three occasions during the preliminary negotiations, that there were 276 Pacific Gold peach trees in the commercial orchard, and had agreed to and did furnish documents from the nursery company which had supplied the trees substantiating the fact that they were Pacific Gold peach trees. These documents were offered and refused as exhibits.

The trial court ultimately became convinced that the parol evidence rule was applicable, and that the evidence which had been received and the exhibits which had been offered, varied and added to the terms of the written contract between the parties. It therefore granted a motion to strike the evidence which had already been admitted, and a judgment of dismissal necessarily followed.

We will not restate or discuss that familiar rule and the reasons for it. See *McGregor v. First Farmers-Merchants Bank & Trust Co.*, 180 Wash. 440, 40 P. (2d) 144.

It is to be noted that, as cited in *Farley v. Letterman*, 87 Wash. 641, 152 Pac. 515:

"By 'parol,' in connection with the present principle is properly meant, not merely oral utterances, but also informal writings, *i.e.* writings (letters, memoranda, etc.) other than the single and final written memorial." 1 Greenleaf on Evidence (16th ed.) 449, note to § 305g.

Appellant urges four reasons why the evidence concerning the warranty was admissible:

██ 1. *It went in without objection.*

The parol evidence rule is not a rule of evidence; it is a rule of substantive law, and testimony falling within the inhibitions of the rule does not become admissible merely because it is not objected to: *Andersonian Inv. Co. v.*

*Wade*, 108 Wash. 373, 184 Pac. 327; *McGregor v. First Farmers-Merchants Bank & Trust Co., supra.*

■ *2. It was within an exception to the rule permitting parol and extrinsic evidence to "clarify and properly identify the subject matter of the contract."*

We assume that the recognized exception to the parol evidence rule that appellant has in mind is that parol evidence is admissible to explain an ambiguity. Appellant argues that because the contract said "fruit trees" and did not identify the kind, other evidence should have been admitted for that purpose. Appellant states in his reply brief:

"The very fact that under the terms of the contract as written by the respondents, the subject-matter is shrouded in mystery and confusion, demands the admission of parol or extrinsic evidence to clarify this patent ambiguity."

No question is raised here concerning the meaning of "etc.," which is the only word that might call for clarification. We see nothing shrouded in mystery and confusion about "property and fruit trees" or "fruit trees, berry bushes, and crops in ground." The purchaser knew exactly what trees he was getting; the contract called for fruit trees, and he got fruit trees. There would be no patent ambiguity clarified by permitting appellant to add, after "fruit trees," the words "of which 276 are Pacific Gold peach trees."

■ *3. It was within an exception to the rule permitting parol and extrinsic evidence to show "all facts and circumstances attending the transaction and the intention of the contracting parties."*

Appellant's principal contention under the above heading is that the warranty on which he relies is a collateral and contemporaneous agreement. Authority is quoted to the effect that if a collateral and contemporaneous agreement acts as an inducement to enter into a contract, parol evidence of such collateral and contemporaneous agreement is admissible, though it may vary or materially change the contract, without its being necessary to allege that the

agreement was left out of the contract through fraud, accident, or mistake.

Such, however, is not the general rule, and it is not the law of this jurisdiction. We said, in *Asher Bros. General Illuminating Co. v. General Illuminating Co.,* 193 Wash. 105, 74 P. (2d) 495:

"Respondent asserts that a contemporaneous oral agreement which is the inducing cause for entering into a written contract may be proven by parol evidence. Many cases are cited as supporting the statement. We have examined them all with much interest, particularly those from the supreme court of Pennsylvania, which do hold that a verbal promise, on the faith of which a written contract is executed, may be established without alleging fraud or mistake, even though it vary the terms of the writing. *Noel v. Kessler,* 252 Pa. 244, 97. Atl. 446; *Excelsior Saving Fund & Loan Ass'n v. Fox,* 253 Pa. 257, 98 Atl. 593.

"But this court has long been committed to the rule that, where a written agreement purports to cover the entire subject matter with respect to which the parties are contracting, evidence of a contemporaneous or prior oral agreement, contradicting or altering the terms of the writing, is inadmissible, in the absence of fraud or mutual mistake. *Hubenthal v. Spokane & Inland R. Co.,* 43 Wash. 677, 86 Pac. 955; *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751; *Union Machinery & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183; *Grubb v. House,* 93 Wash. 200, 160 Pac. 421; *Thompson & Stacy Co. v. Evans, Coleman & Evans,* 100 Wash. 277, 170 Pac. 578; *Kelley v. Smith,* 101 Wash. 475, 172 Pac. 542."

Oral warranties relating to the subject matter of apparently complete written contracts are not such collateral and contemporaneous agreements as may be proved by parol.

In *Grubb v. House,* 93 Wash. 200, 160 Pac. 421, there was a representation that the well which supplied water to a hotel contained a perpetual and abundant supply of good, pure water, fit and suitable for drinking and other purposes. The court said:

"If the allegations are intended to show the breach of a prior or contemporaneous oral warranty as to the water in the well, no cause of action is stated. On this question

the rule is that, where the instrument is complete in itself, evidence of a prior or contemporaneous warranty is in-. admissible."

In *Pacific Aviation Co. v. Philbrick,* 67 Wash. 414, 121 Pac. 864, the court said:

"Touching the question of a parol warranty, it suffices to say that the bill of sale to Waldron warrants title only. The instrument is complete in itself, and evidence of a prior or contemporaneous parol warranty was inadmissible. *Hockersmith v. Ferguson,* 63 Wash. 581, 116 Pac. 11; *Buffalo Pits Co. v. Shriner,* 41 Wash. 146, 82 Pac. 1016; *Davis Calyx Drill Co. v. Mallory,* 137 Fed. 332; *Seitz v. Brewer's Refrigerating Mach. Co.,* 141 U. S. 510."

And again, in *Eilers Music House v. Oriental Co.,* 69 Wash. 618, 125 Pac. 1023:

"The court's refusal to admit evidence as to certain representations or warranties alleged to have been made by respondent prior to the execution of the written contract is assigned as error. The court said: 'I sustain the objection to any representations made prior to the execution of this instrument. They ought to be embodied in the instrument.' The ruling was correct. We find nothing in the case to take it out of the rule that express warranties must be found in the written instrument, which was freely executed by the parties. It cannot be added to nor varied by parol testimony as to antecedent negotiations. *Tobin v. McArthur,* 56 Wash. 523, 106 Pac. 180."

In *Seitz v. Brewers' Refrigerating Mach. Co.,* 141 U. S. 510, 35 L. Ed. 837, 12 S. Ct. 46, cited in *Pacific Aviation Co. v. Philbrick, supra,* it is said:

"There is no pretense here of any fraud, accident or mistake. The written contract was in all respects unambiguous and definite. The machine which the company sold and which Seitz bought was a No. 2 size refrigerating machine as constructed by the company, and such was the machine which was delivered, put up and operated in the brewery. A warranty or guaranty that that machine should reduce the temperature of the brewery to 40° Fahrenheit, while in itself collateral to the sale, which would be complete without it, would be part of the description and essential to the identity of the thing sold; and to admit proof of such an engagement by parol would be to add another

term to the written contract, contrary to the settled and salutary rule upon that subject."

And in *Naumberg v. Young,* 44 N. J. L. 331, a lessee sought to prove that there had been a warranty, during the negotiation of a lease of certain premises for a button factory, that the engine and boiler were adequate to furnish steam for that business. The court said:

"A warranty of the quality of property is collateral to the sale, for the title will pass without such a warranty; but when such an undertaking is entered into, it will form part of the contract by the agreement of the parties. *Benj. on Sales* 452. Hence, when the contract of sale has been reduced to writing, parol evidence is inadmissible to add a contract of warranty to the terms of the contract, as expressed in the writing. . . .
"In the present case the lease is perfect and complete in all its parts. On its face it purports to express the terms of the letting as finally agreed upon. The effort is to engraft, by parol evidence, a contract of warranty upon a contract in writing, which appears to be complete and perfect, and is silent on that subject. Oral testimony cannot be admitted for this purpose without breaking down the rule which permits parties to make their written contracts the only evidence of their undertakings, and enables them to protect themselves from the hazard of uncertain oral testimony with respect to their engagements. Where the lease contains no warranty of the condition of the premises, declarations of the lessor on that subject are not admissible to create a warranty; such proof would be adding to the written agreement by parol evidence. *Dutton v. Gerrish, supra* [9 Cush. 89], and *Brigham v. Rogers,* 17 Mass. 571, are directly in point. In the first of these cases parol evidence of a warranty of the condition of the premises demised—there being a written lease—was excluded; and in the second it was held that, where an estate was demised by lease under seal, no action lay on a parol promise made by the lessor at the time of executing the lease, that the water on the premises demised would be good, and that there would be enough of it, and if not he would make it so."

4. *It established an implied warranty of variety.*

Appellant's authorities, such as *Kelly v. Lum,* 75 Wash. 135, 134 Pac. 819, 49 L. R. A. (N.S.) 1151, might be in point if this were a suit by the purchaser of the trees against the

nursery which had supplied them, but they have no applicability to the present situation.

█ It is settled law that standing trees are part and parcel of the land in which they are rooted, unless they are nursery stock growing in the soil for sale and transplantation: 42 Am. Jur. 200. The fruit trees involved in this case were not nursery stock but had become part of the realty.

█ Without discussing under what circumstances implied warranties may be relied upon in the sale of personal property, we will dispose of appellant's argument on this point by saying that we have found no cases, and appellant has cited none, which recognize that there is such a thing as an implied warranty in the sale of real estate. In *Pollard v. Lyman*, 1 Day (Conn.) 156, 2 Am. Dec. 63, certain land was found to be of no value and it was urged that there was an implied warranty of quality. The court said:

"As to the doctrine of implied warranty, that the article sold is of the ordinary quality of articles of its kind, or equal throughout to the sample seen, it applies only to articles susceptible of a standard quality, or which are sold by samples, and does not extend to lands which have no standard quality, and must depend, for their value, on a variety of circumstances, none of which are reducible to a common measure."

In *York v. Steward*, 21 Mont. 515, 55 Pac. 29, 43 L. R. A. 125, the plaintiff and defendant had entered into a written lease covering a storeroom and basement. In an action for rent, the court refused to permit the tenant to prove an oral warranty as to the condition of the building, and as to certain repairs which were to be made, because, as here, the parties had presumptively reduced their entire contract to writing. The tenant then insisted there was an implied warranty of fitness, and the court said:

"Nor may defendants base their defense and counterclaim upon the breach of an implied warranty of fitness, for in the lease of a house there is no implication of warranty that the property is fitted for the use for which it is let, or that it is suitable for any purpose, or that it shall remain in a tenantable condition."

In *Naumberg v. Young, supra,* which we have heretofore quoted while discussing express warranties, the contention was also made that, since the lease provided that the premises could not be used for any other purpose than a button factory, there was an implied warranty that there would be sufficient steam power for that business. The court said:

"Nor will a warranty, such as has been sued on, be implied from the contract of letting. The general doctrine of the law is, that upon a demise there is no implied contract that the property is fit for the use for which the lessee requires it, whether for habitation, occupation or cultivation."

Finding no merit in any of the four arguments advanced by the appellant as to why the evidence stricken by the trial court should have been received, we are of the opinion that the trial court was correct; and the judgment of dismissal which necessarily followed is affirmed.

MALLERY, C. J., MILLARD, ROBINSON, and SCHWELLENBACH, JJ., concur.