[No. 2117-1.    Division One.    July 14, 1975.]

SINGER CREDIT CORPORATION, *Respondent*, v. MERCER ISLAND MASONRY, INC., *et al*, *Appellants*, THE SINGER COMPANY, *Respondent*.

---

[3]Illegitimate children are entitled to the same security for payment of their support as are legitimate children.

*Norman, Magee & Loreen, John B. Magee,* and *Maryalice Norman,* for appellants.

*Bogle & Gates, Dan P. Hungate,* and *Kimberley W. Osenbaugh,* for respondent.

JAMES, J.—The two actions which are consolidated in this appeal arise from a single commercial transaction—a conditional sale contract by which Friden, Inc., sold a computer and related equipment to Mercer Island Masonry, Inc. The parties on appeal are Hugo J. and Alice A. Cler, appellants; Singer Credit Corporation and The Singer Company, respondents.

The Clers (hereinafter "Cler"), together with Mercer Island Masonry, were defendants in an action brought by Singer Credit Corporation to recover a judgment for the balance of the unpaid purchase price of the computer. Mercer Island Masonry was not a viable entity at the time the action was commenced, and it is not disputed that Cler had guaranteed Mercer Island Masonry's performance. A summary judgment in favor of Singer Credit for the unpaid balance on the contract was granted by Judge Charles Z. Smith. This judgment is the subject of Cler's first appeal.

The summary judgment did not, however, dispose of Cler's cross complaint against The Singer Company. The Singer Company is the successor in interest of Friden, Inc.

Cler's cross complaint is for damages allegedly sustained as a result of false and fraudulent misrepresentations and concealments that induced the purchase of the computer and equipment and for damages resulting from The Singer Company's alleged tortious interference with a business expectancy. The jury trial resulted in a verdict in Cler's favor on both claims. Thereafter, the trial judge, William C. Goodloe, granted The Singer Company's motion for a judgment of dismissal notwithstanding the verdict. Singer's alternative motion for a new trial was denied. Judge Goodloe's order granting the motion for a judgment notwithstanding the verdict is the subject of Cler's second appeal.

We first consider Cler's appeal from Judge Smith's summary judgment in favor of Singer Credit. Before reaching the merits, however, we are confronted with Singer Credit's jurisdictional challenge.

Singer Credit contends that both the summary judgment and the denial of Cler's motion to reconsider occurred on November 17, 1972, and that Cler's January 31, 1973, notice of appeal was, therefore, untimely. Without laboring the matter, we see merit in Cler's assertion that the minute entry to the effect that the motion to reconsider was denied on November 17 reflects an error based upon a misunderstanding. The subsequent maneuverings were complicated by Judge Smith's retirement from the Superior Court bench and the uncertainty concerning Judge James Dore's authority to "reconsider" a ruling by Judge Smith. Under the circumstances, we adhere to our earlier denial of Singer Credit's motion to dismiss for lack of jurisdiction.

On the merits, Cler first assigns as error Judge Smith's denial of his oral motion to strike Singer Credit's affidavit in support of its motion for summary judgment. Cler asserts that Singer Credit failed to comply with CR 56(e) "because the attached papers referred to in the affidavit were neither certified nor sworn." Cler's second assignment is that "[t]he summary judgment was contrary to law be-

cause there were genuine issues of material fact to be decided."

In summary, the issue raised by both of Cler's assignments is whether Singer Credit's showing warranted the granting of its motion. A review of the record discloses that by the affidavit of a branch manager for Singer credit, it is established that the conditional sale contract had been assigned to Singer Credit, a corporate entity distinct from Friden, Inc., and that there was an unpaid balance due under the terms of the contract. None of the questions raised by Cler's cross complaint against the third-party defendant, The Singer Company, were at issue, and Cler offered no evidence to dispute the amount of the claimed unpaid balance.

The test to be applied in ruling on a motion for summary judgment is concisely stated in [CR 56(c)] as follows:

"(c) . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits; if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

*Brannon v. Harmon*, 56 Wn.2d 826, 828, 355 P.2d 792 (1960).

Cler raised no genuine issue as to any material fact. Judge Smith did not err in granting Singer Credit's motion for summary judgment.

The jury verdict in Cler's favor is for the sum of $46,180.43. In response to The Singer Company's request, Judge Goodloe submitted four special interrogatories to the jury. The answers reveal that Cler was awarded $34,180.43 for his fraud claim and $12,000 for his tortious interference claim. The $34,180.43 awarded for the fraud claim is precisely the amount of Singer Credit's summary judgment against Cler plus Cler's legal expenses of $1,500. By instruction No. 3, the jury was told that this was the amount sought by Cler on his fraud claim.

The third-party plaintiff claims that the above circumstances were the cause of judgment against him by the

Singer Credit Corporation on October 20, 1972 and he should have judgment over and against the third-party defendant in the same amount.

Instruction No. 3, in part.[1] The Singer Company took no exception to instruction No. 3, which was primarily devoted to outlining Cler's claims of fraud.

Judge Goodloe's order granting The Singer Company's motion for a judgment of dismissal notwithstanding the verdict recites that:

the court finds that there is no substantial evidence or reasonable inference from the evidence to sustain the verdict and further, insofar as the fraud claim is concerned, the verdict is contrary to law in that said claim is barred by the statute of limitations.

Cler's assignments of error challenge:

1. the finding that no substantial evidence supports the fraud claim;

2. the finding that the fraud claim is barred by the statute of limitations; and

3. the finding that no substantial evidence supports the tortious interference claim.

I. THE FRAUD CLAIM—SUBSTANTIAL EVIDENCE

A motion for a judgment notwithstanding the verdict admits the truth of the opponent's evidence and all inferences which may reasonably be drawn therefrom. The evidence must be interpreted most strongly against the moving party and in the light most favorable to the opponent. *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 386 P.2d 958 (1963). Although fraud "must be proven by evidence that is clear, cogent, and convincing," *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 462, 457 P.2d 603 (1969), the test for the granting of a judgment notwithstanding the verdict remains the same.

---

[1]Judge Goodloe rejected Cler's proposed instruction on the measure of damages and instead instructed as requested by The Singer Company. The instruction (No. 9) advised the jury that it was the court's duty to instruct as to the measure of damages, but the instruction provided the jury with no measure.

No element of discretion is involved. Such motions can be granted only when the court can say, as a matter of law, there is no substantial evidence to support the opponent's claim.

*Davis v. Early Constr. Co., supra* at 254-55.

The jury was properly instructed that Cler's burden was to establish the nine essential elements of fraud by "clear, cogent and convincing evidence" and that such evidence must be "weightier and more convincing than a preponderance of the evidence." Instructions Nos. 4 and 8, in part. Our review of the record persuades us that Cler's evidence and the inferences which could be reasonably drawn therefrom support the jury's finding that his purchase of the computer was induced by fraudulent misrepresentations and concealments. Judge Goodloe erred in setting aside the verdict on this ground.

## II. The Fraud Claim—Statute Of Limitations

When both parties had rested, The Singer Company moved for a directed verdict of dismissal of the fraud claim on the ground that Cler had discovered the facts constituting the alleged fraud more than 3 years prior to commencing his action. Singer relies primarily upon a letter written by Cler more than 3 years prior to his cross complaint alleging fraud. In it, he made some of the charges which he relied upon at trial.

But Cler also testified concerning matters discovered subsequent to his letter which he said finally persuaded him that he had been defrauded. Judge Goodloe stated that, although he had "very little doubt as to the defense of statute of limitations," he felt that because of the 4-day trial, the issue should be submitted to the jury.

The issue was not, however, submitted to the jury. In a "supplemental" proposed instruction, Singer outlined its defenses. The proposed instruction did not, however, include the defense of the statute of limitations.[2]

---

[2] No instruction was given summarizing Singer's defenses.

By the express terms of RCW 4.16.080 (4) (the 3-year statute), a cause of action for fraud does not accrue "until the discovery by the aggrieved party of the facts constituting the fraud." The question of when an aggrieved party realizes that he has been defrauded is obviously one of fact. *Benjamin v. Western Boat Bldg. Corp.*, 475 F.2d 1085 (9th Cir. 1973); *State v. O'Connell*, 83 Wn.2d 797, 523 P.2d 872 (1974); *Easton v. Chaffee*, 16 Wn.2d 183, 132 P.2d 1006 (1943); *Easton v. Chaffee*, 8 Wn.2d 509, 113 P.2d 31 (1941); *McDonald v. McDougall*, 86 Wash. 339, 150 P. 625 (1915). Judge Goodloe properly denied Singer's challenge when both parties had rested, and the statute of limitations issue should have been submitted to the jury. Judge Goodloe erred in granting a judgment notwithstanding the verdict on the ground that the fraud claim was barred by the statute of limitations. Furthermore, Singer's failure to request a proper instruction after denial of its motion for a directed verdict precludes retrial on this issue. *McGarvey v. Seattle*, 62 Wn.2d 524, 384 P.2d 127 (1963); *Bean v. Stephens,* 13 Wn. App. 364, 534 P.2d 1047 (1975).

### III. The Tortious Interference Claim

At trial, two separate incidents were urged by Cler as a basis for recovery on his tortious interference claim. On appeal, however, Cler's argument is limited to the circumstances concerning a proposal that the computer be moved from his premises to the office of his accountant. The plan as testified by the accountant was:

> I suggested possibly the idea of putting the computer in my office. I presented this to Mr. Cler. I says, "But Hugo, I will not purchase it, I will not sign any lease agreement or rental agreement, but possibly, with your help, we could develop a payroll system or other allied accounting system and it will pay for itself over a period of time through developing new business."
>
> Q Did he respond favorably to this?
> A He said, "Let's give it a whirl, let's try it."

The accountant further testified that he telephoned a New York representative of Singer for approval of the arrange-

ment but that Singer refused. The conditional sale contract provides that the computer remain in the buyer's possession at all times and that he may not transfer or dispose of it without the seller's written permission.

Cler agrees that the essential elements which must be established to warrant a recovery for tortious interference are:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Calbom v. Knudtzon,* 65 Wn.2d 157, 162-63, 396 P.2d 148 (1964).

We are satisfied that Cler did not produce substantial evidence to establish any of the necessary elements of his claim. But, even if he had, Singer's refusal to consent to the proposed arrangement was privileged. One who in good faith asserts a legally protected interest of his own which he believes may be impaired by the performance of a proposed transaction is not guilty of tortious interference. Restatement of Torts § 773 (1939); *Hendler v. Cuneo Eastern Press, Inc.,* 279 F.2d 181 (2d Cir. 1960); W. Prosser, *The Law of Torts,* ch. 25, at 944-45 (4th ed. 1971). Judge Goodloe did not err in setting aside the verdict insofar as it includes an award of $12,000 for the tortious interference claim.

Although, as herein related, Judge Goodloe did not base his grant of a judgment notwithstanding the verdict upon the ground of waiver, Singer contends that the evidence establishes as a matter of law that Cler waived his right to assert fraud by entering into an agreement extending the terms of payment after his discovery of the alleged fraud.

The doctrine of waiver generally applies to all legal rights. *Bowman v. Webster,* 44 Wn.2d 667, 269 P.2d 960 (1954).

A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. It is a voluntary act which implies a choice, by the party, to dispense with something of value or to forego some advantage. The right, advantage, or benefit must exist at the time of the alleged waiver. The one against whom waiver is claimed must have actual or constructive knowledge of the existence of the right. He must intend to relinquish such right, advantage, or benefit; and his actions must be inconsistent with any other intention than to waive them.

*Bowman v. Webster, supra* at 669. Whether there has been a waiver is a question of fact which must be submitted to the jury unless the evidence is conclusive on the issue. *Bowman v. Webster, supra* at 670. Whether Cler knew and understood his rights and intended to relinquish them by securing an extension of time in which to pay for the computer was a jury question.

It should be remembered that waiver is an equitable doctrine. Its purpose is to facilitate the doing of equity, not the perpetration of fraud. While reliance is not a requirement, as it is in the doctrine of estoppel (*see Kessinger v. Anderson*, 31 Wn.2d 157, 196 P.2d 289 (1948) ), it is still necessary to show that the party who it is claimed has waived a right, did so intentionally and with full knowledge of his rights. In *Vinneau v. Goede*, 50 Wn.2d 39, 309 P.2d 376 (1957), we held that the question whether there was an intent to waive is one of fact.

*Weitzman v. Bergstrom*, 75 Wn.2d 693, 699, 453 P.2d 860 (1969).

Singer further contends that Judge Goodloe erred in refusing its requested instruction on waiver and asks that a new trial be granted in the event that the judgment notwithstanding the verdict is reversed.[3]

■ The instruction on waiver given by Judge Goodloe, to which Singer excepted, reads as follows:

---

[3]As provided by CR 50, Singer was not required to cross-appeal from the denial of its alternative motion for a new trial.

> A party claiming to be defrauded may waive his claims. A waiver is defined as the intentional relinqushment [*sic*] of a known right and there can be no waiver unless the person against whom the waiver is claimed had a full knowledge of his rights. Neither will waiver be implied from slight circumstances but must be evidenced by an unequivocal and decisive act clearly proven.

Instruction No. 9A. Singer's proposed instruction on waiver was as follows:

> When a party claiming to have been defrauded enters, after discovery of the fraud, into new arrangements or engagements concerning the subject matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud.

Singer argues that "[t]he instruction given left the jury with the impression that the waiver would have to have been expressly made by Cler." We do not agree. The statement that waiver will not be "implied from slight circumstances" clearly permits the conclusion that waiver may nevertheless *be* implied.

On the other hand, Singer's proposed instruction is not a correct statement of the law. A party is not "deemed" to have waived a claim merely by entering into a new arrangement. Unless expressly stated therein, the fact that a new arrangement is agreed upon is only a circumstance which *may* demonstrate an intent to waive a right.

Singer further contends that Judge Goodloe erred in his definition of the first of the nine elements of fraud. The instruction in its entirety read:

> There are nine essential elements of fraud, all of which must be establsihed by clear, cogent and convincing evidence: (1) A representation or concealment of an existing fact; (2) its materiality; (3) its falsity; (4) the maker's knowledge of its falsity; (5) his intent that it be acted upon by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom the representation is addressed; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it, and (9) his consequent damage.

Instruction No. 4. Singer's argument is that the evidence does not warrant the inclusion of the word "concealment." We do not agree. One of Cler's major contentions was that Friden had failed to disclose critical information concerning the limitations of the computer and that the computer was, in fact, obsolete at the time of purchase.

Singer's remaining assignments of error become inapplicable because of our disposition of the various contentions of the parties. Judge Smith's summary judgment in favor of Singer Credit and against Cler is affirmed. Insofar as Judge Goodloe's order for judgment notwithstanding the verdict dismissed Cler's tortious interference claim, it is affirmed. Insofar as it dismissed Cler's fraud claim, it is reversed. The case is remanded to Judge Goodloe for the entry of judgment in Cler's favor and against The Singer Company for the sum of $34,180.43. Both Singer Credit's judgment and Cler's judgment will be deemed to have been entered on the same date and neither party will recover costs.

CALLOW and ANDERSEN, JJ., concur.